## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| MARIE ANDRE, | : |
| Plaintiff, | : Civil Action No. 1:18-cv-03183-RBK-AMD |
| v. | : **OPINION** |
| TRINITY HEALTH CORPORATION, LOURDES CARDIOLOGY SERVICES, HEALTH MANAGEMENT SERVICES ORGANIZATION, INC., MERCEDES FUSCELLARO (*individually*), JENNIFER GARRON (*individually*), GAYLE WEXLER (*individually*), BARBARA HOELFNER (*individually*), and JILLIAN ("JILL") M. KOERNER (*individually*), | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court on the Motion of Trinity Health Corporation ("Defendant THC"), Lourdes Cardiology Services ("Defendant LCS"), Health Management Services Organization, Inc. ("Defendant HMS") (collectively "Corporate Defendants"), Mercedes Fuscellaro, Jennifer Garron, Gayle Wexler, Barbara Hoelfner, and Jillian Koerner (collectively "Individual Defendants") (Corporate Defendants and Individual Defendants are collectively "Defendants") to dismiss Plaintiff Marie Andre's aiding and abetting claim under the New Jersey Law Against Discrimination ("NJLAD") against the Corporate Defendants, each of Plaintiff's claims against Defendant THC, and Plaintiff's wage and hour claims under the New Jersey Wage and Hour Law ("NJWHL") and Fair Labor Standards Act ("FLSA") against the Individual Defendants. (Doc. 6). For the reasons articulated in the Opinion, the motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND[1]

This case arises from alleged unlawful employment discrimination and wage issues. Plaintiff is a woman of Black and Haitian descent who was employed at Defendant Lourdes Cardiology Services ("Defendant LCS"). Amended Complaint (Am. Compl.) [Doc. No. 5] at ¶ 24. In May 2015, Plaintiff applied for the position of Registered Medical Assistant with Defendant LCS. *Id.* at ¶ 25. Daniele Dobbins and Defendant Mercedes Fuscellaro each interviewed Plaintiff for the position. Following her interview with Defendant Fuscellaro, Plaintiff was informed she was hired for the position. *Id.* at ¶ 27. About one month into her employment, Defendant Fuscellaro and her co-workers started discriminating against Plaintiff because of her Haitian accent. *Id.* at ¶ 30. Soon after, Plaintiff complained to Defendant Fuscellaro about one instance when one of Plaintiff's co-workers "hit [her] in the back with objects." *Id.* at ¶ 31. Plaintiff alleges that Defendant Fuscellaro never investigated her report or took corrective action, and as a result, she continued to experience discrimination at the hands of her co-workers and Defendant Fuscellaro. *Id.* at ¶ 35.

Plaintiff further claims that Defendant Fuscellaro also made her work additional hours before clocking in and after clocking out. *Id.* at ¶ 44. Plaintiff states that these unpaid hours totaled approximately six to seven hours per week. *Id.* After, Plaintiff complained to Defendant Jillian Koerner, the Human Resource Manager, about Defendant Fuscellaro's actions. *Id.* at ¶ 45. In response, Defendant Koerner instructed Plaintiff to "stop working without pay or we [indicating Defendants] will get in trouble." *Id.* Following this complaint, Defendant Koerner

---

[1] On this motion to dismiss, the Court accepts as true the facts pled in the Complaint and construes them in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

informed Plaintiff that she will be in touch; however, Defendant Koerner did not speak to Plaintiff until after her alleged wrongful termination. *Id.* at ¶ 36.

A few days later, Defendant Jennifer Garron approached Plaintiff regarding her previous complaints to Defendant Koerner. *Id.* at ¶ 47. As the alleged discrimination continued, Plaintiff complained again to Defendant Garron, who then scheduled two meetings: the first meeting included only Defendant Garron and Plaintiff; the second meeting included Plaintiff, Defendant Garron, and Defendant Fuscellaro. *Id.* at ¶ 53.

Despite these complaints, the alleged discrimination continued. Again, Plaintiff states that Defendant Fuscellaro continued to force her to work unpaid hours. *Id.* at ¶ 59–60. In response, Plaintiff asked Defendant Fuscellaro to be compensated. Defendant Fuscellaro allegedly told Plaintiff to comply or face termination. *Id.* at ¶ 61–62.

Soon after, Plaintiff entered the emergency room at Lourdes Hospital because of stress regarding her treatment at work. The emergency staff diagnosed her with gastric issues. *Id.* at ¶ 67. A few days later, Plaintiff arrived at work but soon realized that she forgot her stethoscope at home. *Id.* at ¶ 68. Plaintiff then rushed home to get the stethoscope, and about three days later, Defendant Fuscellaro came forward with a videotape which showed Plaintiff leaving the office for approximately seven minutes after she had clocked into work. *Id.* at ¶ 69. In response to the tape, Plaintiff explained she suffered from serious health problems and that, on the day in question, she had rushed home to retrieve her stethoscope. *Id.* After, Plaintiff had a compliance meeting regarding the tape that Defendant Fuscellaro discovered. *Id.* at ¶ 75.

During Plaintiff's compliance meeting she met with Defendant Hoelfner, Defendant Wexler, and Defendant Fuscellaro. In this meeting, she explained that she had left her stethoscope at home, and she shared her emergency room records to prove her recent

hospitalization. *Id.* at ¶ 80. Plaintiff also complained about Defendant Fuscellaro's actions. Then Defendant Wexler allegedly informed Plaintiff that the company would investigate her reports of discriminatory treatment. *Id.* at ¶ 81.

The following day, Plaintiff again met with Defendant Wexler to discuss Defendant Fuscellaro's alleged discriminatory conduct. *Id.* at ¶ 85. Following this meeting, Plaintiff spoke with Defendant Garron who informed her that the decision to fire Plaintiff its left up to Defendant Barbara Hoelfner. *Id.* at ¶ 90. After, Plaintiff had a meeting with both Defendant Garron and Hoelfner, during which they accused her of stealing company time and terminated her. *Id.* at ¶ 91. Following her termination, Plaintiff received a phone call from Defendant Koerner who added that termination further stemmed from an "incident" that happened earlier in January. *Id.* at ¶ 94. Plaintiff claims that Defendant Koerner refused to identify this incident. *Id.*

Plaintiff filed several claims related to the allegations above. Plaintiff alleges violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Acts of 1964, New Jersey Law Against Discrimination ("NJLAD"), Family and Medical Leave Act ("FMLA), Fair Labor Standards Act ("FLSA"), and New Jersey Wage and Hour Law ("NJWHL"). Plaintiff asserts nine causes of action related to these laws. Count I alleges a violation of 42 U.S.C. § 1981 for discrimination and retaliation. Count II alleges a violation of Title VII for discrimination. Count III alleges a violation of Title VII for retaliation. Count IV alleges a violation of FMLA for discrimination. Count V alleges a violation of NJLAD for discrimination. Count VI alleges a violation of NJLAD for retaliation. Count VII alleges a violation of NJLAD for aiding and abetting. Count VIII alleges a violation of FLSA for failure to pay overtime wages. Count IX alleges a violation of NJWHL for failure to pay overtime wages.

Defendant now moves to dismiss Count VII against the Corporate Defendant, Count VIII and IX against the Individual Defendants, and each of Plaintiff's claims against THC.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III. DISCUSSION

Defendants' motion to dismiss raises three issues. First, Defendants have moved to dismiss all claims against Defendant THC on the ground that Plaintiff has failed to plead any relevant factual allegations against it. Second, Defendants have moved to dismiss Count VII for aiding and abetting against the Corporate Defendants on the ground that this cause of action only applies to individual supervisors. Third, Defendants have moved to dismiss Counts VIII and IX for wage and hour violations against the Individual Defendants on the ground that the Individual Defendants are not "employers" within the meaning of the Fair Labor Standards Act ("FLSA") and New Jersey Wage and Hour Law ("NJWHL"). The Court will address these issues in turn.

### A. Claims against Defendant Trinity Health Corporation

Defendants argue that each of the claims must be dismissed against Defendant THC because Plaintiff has failed to plead any facts, beyond mere threadbare allegations, against Defendant THC. Defendants' Brief (Defs. Br.) [Doc. No. 6] at 9–12. In response, Plaintiff alleges that the "joint and solo employer" language in the complaint as well as the Plaintiff's paystub with Defendant THC's name on it are sufficient factual allegations that Defendant THC was her employer. Plaintiff's Brief (Pl. Br.) [Doc. No. 7] at 22–24.

The central issues are whether Plaintiff has pled enough factual allegations against Defendant THC and whether the Court can consider the Plaintiff's paystub in determining whether Defendant THC was the Plaintiff's employer. Defendants contend that each claim against Defendant THC relies on Plaintiff having either a contractual relationship with Defendant THC or that Defendant Trinity Health Corporation was Plaintiff's employer. The only two allegations in the complaint against Defendant THC are that Defendant THC "was and is a foreign corporation authorized to do business in the State of New Jersey" and it was Plaintiff's

"joint and solo employer." Am. Compl. at ¶¶ 8, 21. In response, the Plaintiff contends, the "joint and solo employer" language is a sufficient allegation that Defendant THC was her employer. In addition, the Plaintiff relies on her paystub that lists Defendant THC as her employer.

The Plaintiff alleges this Court can consider the Plaintiff's paystub, which is not attached to the complaint, because: (1) in considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record; and (2) this Circuit held that the Federal Rule of Civil Procedure 8 mandates a notice pleading whereby the Plaintiff is only required to set forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element.

Plaintiff's first argument fails because it is contrary to this Circuit's case law. Plaintiff incorrectly broadens language from a case in this Court that states, "In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record." *Michelon v. FM Home Improvement, Inc.*, No. 9-4646, 2010 WL 3614209, at *3 (D.N.J. Sept. 8, 2010); however, the reference to "attached exhibits" is not exhibits attached to a *motion*. Instead, the Third Circuit has held that "courts generally consider only the allegations contained in the complaint, *exhibits attached to the complaint* and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (emphasis added).

Plaintiff's second argument falls equally short because Plaintiff has not pled enough facts to raise a reasonable expectation that discovery would reveal evidence of this paystub. As Defendant notes, Plaintiff has failed to plead any facts establishing that Defendant THC was her employer beyond the conclusory statement that it was her "joint and solo employer." Defs. Br.

at 10. Plaintiff is correct that a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *See Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014); however, Plaintiff's sole allegation that Defendant THC was her "joint and solo employer" is simply a conclusory allegation that is not enough to raise a reasonable expectation that discovery will reveal evidence that Defendant THC was her employer. This Court will not ignore the rules of civil procedure simply because this paystub *could* have been revealed through discovery. Since the Complaint fails to reference the paystub or earning statements and plead more than just threadbare allegations regarding Defendant THC, this Court cannot and will not consider the paystub as part of the Complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Since the paystub and earning statements cannot be considered, the claims against Defendant THC must be dismissed for Plaintiff's failure to plead more than just one conclusory allegation that Defendant THC was and is her "joint and solo employer." Therefore, Defendants' motion to dismiss all claims against Defendant THC is **GRANTED**.

### B. Plaintiff's claim of aiding and abetting against Corporate Defendants (Count VII)

Defendants have also moved to dismiss Count VII against the Corporate Defendants on the ground that corporate entities cannot be held liable for aiding and abetting alleged discriminatory conduct. Defs. Br. at 6. In response, Plaintiff contends that § 10:5-12(e) of the NJLAD is not confined to individual supervisory liability. Pl. Br. at 26.

The central issue is whether corporate entities can be held liable under § 10:5-12(e) for aiding and abetting allegedly discriminatory conduct. Defendants' argument appears to turn on Defendants' reading of well-established Third Circuit cases, *Hurley* and *Failla*.

In *Hurley*, the Third Circuit held that despite the broad language of N.J. Stat. Ann. § 10:5-12(e), "a nonsupervisory employee cannot be liable as an aider and abettor for his own affirmative acts of harassment." *Id.* at 141. Defendants' contend that *Hurley* stands for the proposition that "New Jersey courts would impose aiding and abetting liability only on supervisory employees." Def. Br. at 6.

In *Failla*, the Third Circuit has also stated "§ 12(e) by its express terms contemplates individual liability of the employees for aiding and abetting a LAD violation." *Failla v. Cty. of Passaic*, 146 F.3d 149, 155 (3d Cir. 1998). Defendants insist *Failla* stands for the proposition that aiding and abetting liability applies only to individuals. Defendants' Reply Brief (Defs. Reply Br.) [Doc. No. 9] at 5–6. According to Defendants' interpretations of *Hurley* and *Failla*, the corporate entities cannot be held liable for aiding and abetting.

This Court rejects Defendants' arguments because their reading of the case law is contrary to the language of § 10:5-12(e) of the NJLAD. First, N.J. Stat. Ann. § 10:5-12(e) & § 10:5-5(a) by their terms, contemplate liability for *any* person, including *corporations*. The NJLAD states in pertinent part that it shall be unlawful "for *any person*, whether an employer or not, to aid, abet, incite, compel or coerce the doing any of the acts forbidden under this act, or to attempt to do so." N.J. Stat. Ann. § 10:5-12(e). The NJLAD defines "person" to include "one or more individuals, partnerships, associations, organizations, labor organizations, *corporations*, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries." *Id.* § 10:5-5(a).

Contrary to Defendants' attempts to parse this statute, this Court finds it clear and unambiguous. The United States Supreme Court has held that unambiguous statutory language must be read according to its plain reading. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). The New Jersey Supreme Court has also emphasized repeatedly that "[i]n the

interpretation of a statute our overriding goal has consistently been to determine the Legislature's intent." *Young v. Schering Corp.*, 141 N.J. 16, 25 (1995) (quoting *Roig v. Kelsey*, 135 N.J. 500, 515 (1994)). The New Jersey Supreme Court has held that the "overarching goal of the [LAD] is nothing less than the eradication 'of the cancer of discrimination.'" *Fuchilla v. Layman*, 109 N.J. 319, 334 (1988) (quoting *Jackson v. Concord Co.*, 54 N.J. 113, 124 (1969)). With this goal in mind, the Legislature has directed that the LAD "shall be liberally construed." N.J. Stat. Ann. § 10:5-3. Thus, this Court rejects Defendants' narrow reading of the statute.

This Court further rejects Defendants' reading of *Hurley* and *Failla*. Defendants are using *Hurley* and *Failla* to overly narrow a broad statutory reading. Defendants' contention that § 12(e) is limited only to supervisory employees finds no support in the text of *Hurley* or *Failla*. Both *Hurley* and *Failla* acknowledge that the NJLAD contemplates individual liability for supervisory employees; however, this does not mean that the NJLAD is limited to *only* supervisory employees.

Based on the above, this Court finds that Corporate Defendants may be potentially liable under N.J. Stat. Ann. § 10:5-12(e) for aiding and abetting an alleged NJLAD violation against Plaintiff. This holding appears consistent with others in this District as well. *See Kamdem-Ouaffo v. Task Mgmt. Inc.*, No. 7506, 2018 WL 3360762, at *17 (D.N.J. July 9, 2018) (holding that all defendants, including a corporate defendant, are subject to N.J. Stat. Ann. § 10:5-12(e) because § 12(e) "applies broadly to *persons*" (emphasis added)); *Stengart v. Loving Care Agency, Inc.*, No. BER-L-868-08, 2010 N.J. Super. LEXIS 3086, at *18 (N.J. Super. Ct. Law Div. Nov. 4, 2010) (denying the defendant's motion to dismiss because LCA, a corporation, fit within the NJLAD's definition of a person and there was enough evidence for a reasonable jury

to conclude that LCA aided and abetted a hostile work environment). Thus, Defendants' motion to dismiss Count VII against Corporate Defendants is **DENIED**.

### C. Plaintiff's wage and hour claims against Individual Defendants (Counts VIII and IX)

Defendants next move to dismiss Counts VIII and IX against Individual Defendants because they are not "employers" within the meaning of the FLSA and NJWHL. Defendants contend that Plaintiff has failed to allege that Individual Defendants had significant ownership interests in the company or had operational control. Defs. Br. at 6.

The definitions of "employer" and "employee" under the FLSA and NJWHL are virtually identical. An employer under the FLSA is defined as someone "who acts in the interest of an employer in relation to the employee." 29 U.S.C. § 203(d). Similarly, the NJWHL defines "employer" as "any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." N.J. Stat. Ann. § 34:11-56a1(g).

The NJWHL definition of "employer," like the FLSA definition, allows for individual liability and is to be given liberal construction. *See DOL v. Pepsi-Cola Co.*, 170 N.J. 59, 62 (2001). Aside from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute "joint employers" for purposes of liability under the FLSA. When assessing whether a "joint employer" relationship exists, the Third Circuit has held that "a court should consider the following non-exhaustive list of relevant factors:

> (1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including

> employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 149 (3d Cir. 2014). The focus is on the "totality of the circumstances rather than on technical concepts of the employment relationship." *Id.* at 154.

As Plaintiff points out, the test for whether someone is an employer under the FLSA and NJWHL is not limited to individuals who have ownership interests in the company. This Court agrees and finds that the appropriate test is laid out by the Third Circuit in *Thompson*, and Plaintiff has pled enough factual allegations that Individual Defendants may be employers within the meaning of FLSA and NJWHL. The factual allegations against each Individual Defendant regarding these factors is examined below.

1. **Defendant Fuscellaro**

Defendant Fuscellaro may be considered an employer within the meaning of FLSA and NJWHL for several reasons. First, Defendant Fuscellaro appears to play a role in Defendant LCS's hiring and firing process. For example, Defendant Fuscellaro interviewed Plaintiff for the position she was ultimately hired for and has used her control to threaten Plaintiff with termination. Am. Compl. at ¶¶ 20, 62. Second, Defendant Fuscellaro appears to have the authority to discipline employees, including Plaintiff. By way of example, Defendant Fuscellaro supervised Plaintiff in the workplace and received Plaintiff's complaints of assault and discrimination. *Id.* at ¶ 26–27, 34. Third, Defendant Fuscellaro appears to have the authority to promulgate work rules and assignments. For example, the Complaint alleges: (1) Defendant Fuscellaro forced Plaintiff to work additional hours without compensation before clocking in and after clocking out; (2) Defendant Fuscellaro informed Plaintiff that she had to complete extra

work in order to keep her job because there was insufficient funding for the approval of overtime hours; (3) Plaintiff would ask Defendant Fuscellaro for permission to leave work early; and (4) Defendant Fuscellaro informed Plaintiff that she had to work extra hours or she would be fired.

### 2. Defendant Hoelfner

Defendant Hoelfner may be considered an employer within the meaning of FLSA and NJWHL. The complaint alleges that Defendant Hoelfner is the ultimate decision maker to fire an employee. *Id.* at ¶ 90.

### 3. Defendants Garron, Wexler, and Koerner

Defendants Garron, Wexler, and Koerner may be considered employers within the meaning of FLSA and NJWHL. Each of the following allegations, when accepted as true, suggest that Defendants Wexler, Garron, and Koerner could play a substantial role in the day-to-day employee supervision, including employee discipline. First, the Complaint alleges that Plaintiff complained directly to Defendant Koerner regarding Defendant Fuscellaro's alleged discriminatory conduct towards her as well as Defendant Fuscellaro forcing her to work unpaid. *Id.* at ¶ 45. In response, Defendant Koerner informed Plaintiff to "stop working without pay or we [indicating Defendants] will get in trouble." *Id.* Second, the Complaint further alleges that Defendant Garron approached Plaintiff in follow-up to Plaintiff's complaints to Defendant Koerner regarding Defendant Fuscellaro, and that at one-point Defendant Garron set up three different meetings: one with Defendant Fuscellaro, another one with Plaintiff, and then a final one with Defendant Fuscellaro and Plaintiff together. *Id.* at ¶ 53–55.

Third, during a compliance meeting with Defendant Hoelfner and Defendant Wexler, Plaintiff allegedly complained about Defendant Fuscellaro's discriminatory actions. *Id.* at ¶ 80. At this meeting, Plaintiff asked Defendant Wexler to look into Plaintiff's reports of

discriminatory conduct. *Id.* at ¶ 81. The following day Plaintiff met with Defendant Wexler to further complain about Defendant Fuscellaro's actions. *Id.* at ¶ 83. Fourth, the Complaint further alleges that Defendant Garron was present at the meeting when Plaintiff was ultimately terminated and even accused Plaintiff of stealing company time. *Id.* at ¶ 91. Fifth, after Plaintiff was terminated, the Complaint alleges that Defendant Koerner advised Plaintiff that she was also being terminated for a separate incident in January that Defendant Koerner "refused to identify." *Id.* at ¶ 94.

Finally, the Court notes that its assessment rests heavily on the procedural posture of this litigation. Plaintiff, a low-level employee with each of the Defendant companies, has had no opportunity for discovery as to payroll and taxation documents, disciplinary records, internal corporate communications, or leadership and ownership structures. It may well be that a fully developed factual record will preclude a finding that Individual Defendants were joint employers of Plaintiff for any of the pay periods at issue. But under these circumstances, the Court cannot say that Plaintiff's Complaint fails to state a claim upon which relief can be granted. Thus, Defendants' motion to dismiss Counts VIII and IX against Individual Defendants is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss all of Plaintiff's claims against Defendant Trinity Health Corporation is **GRANTED**, Defendants' motion to dismiss Plaintiff's aiding and abetting claim against Corporate Defendants is **DENIED**, and Defendants' motion to dismiss Plaintiff's wage and hour claims against Individual Defendants is **DENIED.** Plaintiff may amend the claims against Defendant THC within fourteen (14) days of this Opinion.

Dated: 3/14/2019                                            *s/* Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge