NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| MARIE ANDRE, | : | |
| Plaintiff, | : | Civil No. 18-03183 (RBK/AMD) |
| v. | : | **OPINION** |
| LOURDES CARDIOLOGY SERVICES; HEALTH MANAGEMENT SERVICES ORGANIZATION, INC.; MERCEDES FUSCELLARO (*individually*); JENNIFER GARRON (*individually*); GAYLE WEXLER (*individually*); BARBARA HOELFNER (*individually*); AND JILLIAN ("JILL") M. KOERNER (*individually*); | : | |
| Defendants. | : | |

**ROBERT B. KUGLER**, United States District Judge:

This matter comes before the Court on the Motion for Summary Judgment (Doc. No. 52) by Lourdes Cardiology Services ("Defendant LCS"), Health Management Services Organization, Inc. ("Defendant HMS"), Mercedes Fuscellaro, Jennifer Garron, Gayle Wexler, Barbara Hoelfner, and Jillian Koerner. For the reasons articulated in this Opinion, the motion is **GRANTED IN PART** with respect to FMLA and disability discrimination claims and **DENIED IN PART** with respect to all other claims.

**I.     BACKGROUND**

This is an employment discrimination case filed by Marie Andre ("Plaintiff") against her former employer and former supervisors. The material undisputed facts are as follows. Plaintiff was employed as a medical assistant at Defendant LCS from July 20, 2015 to July 19, 2017. Def.

1

St. (Doc. No. 52-2 at ¶ 1); Pl. St. (Doc. No. 69 at ¶ 8). Defendant Mercedes Fuscellaro was Plaintiff's supervisor. Pl. St. (Doc. No. 69 at ¶ 3). Defendant Jennifer Garron was an Operations Manager at LCS. (*Id.*) Defendant Gayle Wexler was the Human Resources Business Partner at LCS. (*Id.* at ¶ 4.) Defendant Barbara Hoelfner was Vice President for Corporate Ethics at LCS. (*Id.* at ¶ 5.) Defendant Jillian Koerner was a Human Resources Business Partner at LCS. (*Id.* at ¶ 7.) At the time of her termination, Plaintiff earned $16.82 per hour. (*Id.* at ¶ 10.)

Plaintiff's performance review stated that she "Meets Standards," and it contained no unfavorable statements. (*Id.* at ¶ 12.) Plaintiff's feedback from her own supervisor Defendant Fuscellaro was likewise positive. (*Id.*) On June 21, 2016, Plaintiff sent a written complaint to Defendant Koerner stating that Defendant Fuscellaro had physically assaulted Plaintiff and had been verbally harassing her about her accent. Pl. Br. Exh. E (Doc. No. 70-4). Plaintiff, Defendant Fuscellaro, and Defendant Garron met on June 23, 2016 to discuss the complaint. Pl. St. (Doc. No. 69 at ¶ 49). Defendant Fuscellaro was reprimanded for pointing her finger close to Plaintiff's face. Dep. Mercedes Fuscellaro, Def. Br. Exh. 3 (Doc No. 52-6 at 15:13-16). Plaintiff was never given a written warning for any issue with her job performance. Pl. St. Addt'l Facts (Doc. No. 69-1 at ¶ 39). On June 20, 2017, Plaintiff stepped out of work for several minutes after having already clocked in to retrieve her stethoscope. Dep. Fuscellaro, Def. Br. Exh. 3 (Doc. No. 52-6 at 62:12-63:17); Dep. Andre, Pl. Br. Exh. A (Doc. No. 70-1 at 295:02-10). Plaintiff was terminated from her job on July 19, 2017. Def. Br. Exh. 24 (Doc. No. 52-18).

The parties dispute several facts pertaining to several events that led to Plaintiff's termination. Plaintiff asserts that she was subject to disparate treatment and ongoing harassment due to her country of origin and her accent. In particular, she states that Defendant Fuscellaro repeatedly brought up her accent in front of coworkers, and she asked Plaintiff to explain how she

obtained her green card, whether Haitians eat clay, and if she came to the United States on a boat. Pl. St. (Doc. No. 69 at ¶ 47); Pl. St. Addt'l Facts (Doc. No. 69-1 at ¶¶ 13, 14, 17). Plaintiff also asserts discriminatory acts due to her skin color, such as being questioned about her skin color and asked if she wore makeup. Pl. St. Addt'l Facts (Doc. No. 69-1 at ¶ 15). Plaintiff asserts additional hostile behavior by Defendant Fuscellaro, including calling Plaintiff a "bitch," allowing another employee to physically search Plaintiff for allegedly stolen food, and often refusing to speak to Plaintiff. (*Id.* at ¶¶ 11, 16, 18). Defendant Fuscellaro testified that she was aware of neither the LCS's anti-discrimination policy nor her managerial responsibilities under the policy. Pl. St. Addt'l Facts (Doc. No. 69-1 at ¶ 36).

Plaintiff asserts that Defendant Fuscellaro told Plaintiff to work overtime without pay in order to keep her job, (*id.* at ¶ 19), and that Plaintiff worked overtime an estimated ten hours per week. Dep. Marie Andre, Pl. Br. Exh. A (Doc. No. 70 at 25:01-14; 282:18–284:22). Plaintiff avers that the purported time-theft on June 20, 2017 was the pretextual reason for her termination, when in reality she was fired for discriminatory reasons. Defendant Garron testified that she was unsure if time theft should be treated as a fireable offense or subject to LCS's established written warning system. Pl. St. Addt'l Facts (Doc. No. 69-1 at ¶ 40).

Defendants deny the allegations of discriminatory statements about Plaintiff's accent and country of origin. They point out that the Defendants themselves had made the choice to hire Plaintiff, and that LCS maintains a diverse workforce. Def. Br. (Doc. No. 52-1). They describe Plaintiff's work performance as unreliable and worsening over time. (*Id.*) Defendants maintain that Plaintiff's termination from work was due to her insubordination, her incident of time-theft, and her violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") for looking up her own medical records at the office. (*Id.*) Defendants further maintain that Plaintiff

3

was not entitled to any kind of written warning procedure. (*Id.*) Defendants deny Plaintiff's claims for any overtime, pointing out that Plaintiff has not proffered evidence beyond her own deposition testimony. (*Id.*)

Plaintiff alleges violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Acts of 1964, New Jersey Law Against Discrimination ("NJLAD"), Family and Medical Leave Act ("FMLA), Fair Labor Standards Act ("FLSA"), and New Jersey Wage and Hour Law ("NJWHL"). Plaintiff asserts nine causes of action related to these laws. Count I alleges a violation of 42 U.S.C. § 1981 for discrimination and retaliation. Count II alleges a violation of Title VII for discrimination. Count III alleges a violation of Title VII for retaliation. Count IV alleges a violation of FMLA for discrimination. Count V alleges a violation of NJLAD for discrimination. Count VI alleges a violation of NJLAD for retaliation. Count VII alleges a violation of NJLAD for aiding and abetting. Count VIII alleges a violation of FLSA for failure to pay overtime wages. Count IX alleges a violation of NJWHL for failure to pay overtime wages.

In a March 14, 2019 Order, this court granted Defendant's motion to dismiss with respect to Defendant Trinity Health Corporation. (Doc. No. 13). On March 3, 2021, the remaining Defendants filed the present Motion for Summary Judgment (Doc. No. 52).

## II. LEGAL STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken

4

as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id*. at 255; *Matsushida*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in her favor. *Id.* at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. DISCUSSION

Plaintiff's claims are in the following categories: FMLA and disability discrimination; Title VII, Section 1981, and NJLAD claims for discrimination, retaliation, and aiding and abetting; and FLSA and NJWHL claims for overtime pay. Each set of claims is discussed in turn. Plaintiff's response discusses a hostile work environment claim, Pl. Br. (Doc. No. 69 at 6), but this claim was not brought in the original Complaint and therefore is not addressed here.

#### A. FMLA discrimination and disability discrimination

We first address Plaintiff's claim of discrimination under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. Plaintiff's counsel stated during deposition that Plaintiff is not asserting a claim for discrimination under the FMLA or disability-related claims.

5

Dep. Andre, Def. Br. Exh. 1 (Doc. No. 52-4 at 339:4-23). Plaintiff's response does not mention FMLA or disability-related claims or discuss any allegations or disputes of fact as they relate to any potential disability-related claim. Therefore, summary judgment for Defendants on these claims is appropriate.

### B. Title VII, Section 1981, and NJLAD claims

Claims for discrimination and retaliation are subject to the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tourtellotte v. Eli Lilly & Co.*, 636 F. Appx. 831, 841 (3d Cir. 2016) ("All retaliation and discrimination claims brought under Title VII and the NJLAD, including those based on sex, race, and disability, which rely on circumstantial evidence, are controlled by the three-step burden-shifting framework set forth in [*McDonnell Douglas*]."). Plaintiff has the initial burden to establish a *prima facie* case of discrimination, by preponderance of the evidence. *Id.* The burden then shifts to the employer who must articulate a legitimate, non-discriminatory reason for its decision. *Id.* The burden then shifts back to Plaintiff to show that the employer's explanation is pretextual. *Id.*; *see also Thompson v. Bridgeton Bd. of Educ.*, 9 F. Supp. 3d 446, 454 (D.N.J. 2014) (describing burden-shifting framework under *McDonnell Douglas*). This framework applies to Title VII, Section 1981, and NJLAD claims. *See Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) (stating that the same analysis applies to Section 1981 and Title VII claims in employment discrimination cases); *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) ("This Court's discrimination inquiry is the same for claims filed under Title VII and the NJLAD[.]").

#### 1. Discrimination

To meet her initial burden of establishing a *prima facie* case for discrimination, Plaintiff must show that she (1) was a member of a protected class; (2) was qualified for her position; (3)

6

suffered an adverse employment action; and (4) the circumstance of the adverse employment action give rise to an inference of unlawful discrimination. *Jones v. Sch. Dist.*, 198 F.3d 403, 410 (3d Cir. 1999). Defendants challenge the second and fourth prongs. On the second prong, Defendants argue that Plaintiff failed to perform her job at the level expected, and they cite evidence of repeated patient and coworker complaints against Plaintiff for her attitude and performance. They also point to Plaintiff's HIPAA violation and time-theft incident. On the fourth prong, Defendants deny a causal connection between Plaintiff's allegations of discrimination and the decision to terminate her employment, seeing as Plaintiff was terminated for issues with work performance.

Plaintiff has established genuine issues of material fact as to her *prima facie* case for discrimination. Regarding the second prong, Plaintiff points to her favorable written performance reviews. Regarding the fourth prong, Plaintiff has proffered evidence of specific instances of animus toward her regarding her race and country of origin, such as comments about her accent and questions about her immigration status. She also points to the inconsistent reasons Defendants have given for the basis of her termination.

The burden then shifts to Defendants, who must articulate a legitimate, non-discriminatory reason for terminating Plaintiff. Defendants proffer several reasons why Plaintiff was terminated: insubordination, time-theft, and a HIPAA violation. These are legitimate nondiscriminatory reasons to terminate an employee, so Defendants have met this burden.

The burden returns to Plaintiff, who must show that Defendants' reasoning is pretextual. The presence of legitimate, nondiscriminatory reasons for Plaintiff's termination does not eliminate the possibility that they were pretextual reasons. *See Tomasso v. Boeing Co.*, 445 F.3d 702, 704 (3d Cir. 2006) ("[A] rational factfinder could dismiss the secondary reasons as pretextual,

not because they played no role in [Plaintiff's] layoff but because they cannot explain the layoff sufficiently."). Plaintiff has met her burden. Plaintiff points to the inconsistencies in Defendants' testimony for the reason she was terminated. Defendants' briefing suggests a combination of work performance issues and policy violations led to Plaintiff's termination, but individual Defendants' testimony cites only one incident of time-theft. Defendants did not document any of Plaintiff's purported work performance issues contemporaneously, nor did Defendants follow their own written warning system. Given these inconsistencies, genuine issues of material fact persist as to whether Plaintiff was terminated for discriminatory reasons.

### 2. Retaliation

To establish a prima facie case of retaliation, a plaintiff must show: "(1) That she engaged in protected employee activity; (2) that there was an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) that there is a causal connection between the employee's protected activity and the employer's adverse action." *Marra v. Philadelphia Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

Here, Plaintiff has shown all prongs. She was engaging in a protected employee activity when she made complaints of discrimination. Afterward, she was terminated. She was also subject to post-hoc investigatory efforts which fell outside of Defendants' prescribed performance management process. Plaintiff has proffered evidence that introduces doubt as to her employer's stated motivation: Plaintiff never received written warnings, and her supervisors' sworn testimony is unclear as to the true reason why Plaintiff was terminated. Deviation from an employer's stated progressive disciplinary policy is suggestive of causality. *See, e.g.*, *Barnett v. Lowes Home Ctrs., LLC*, No. 18-2064, 2019 WL 1047496, at *9 (E.D. Pa. Mar. 5, 2019). The fact that the termination was not temporally proximate to Plaintiff's complaint of discrimination does not defeat her

8

showing of a casual connection. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281-82 (3d Cir. 2000) ("Although timing and ongoing antagonism have often been the basis for the causal link, our case law clearly has allowed a plaintiff to substantiate a causal connection [] through other types of circumstantial evidence that support the inference. For example, a plaintiff may establish the connection by showing that the employer gave inconsistent reasons for terminating the employee.").

Because Plaintiff has established her prima facie case of retaliation, the burden shifts to the employer to articular some legitimate, nondiscriminatory reason for Plaintiff's termination. The reasons are the same as stated above for the discrimination claims, so Defendants have met this burden.

The burden then shifts back to Plaintiff to show that Defendants' explanation for the termination was pretextual. A showing of pretext requires that Plaintiff "demonstrate weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions from which a reasonable juror could conclude that the Defendants' explanation is unworthy of credence, and hence infer that the employer did not act for the asserted [non-retaliatory] reasons." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 262 (3d Cir. 2017) (internal citations omitted). Plaintiff has done so. As stated above, Defendants' failure to comply with their own discipline policies, as well as the individual Defendants' inconsistent reasoning for Plaintiffs' termination, could lead a jury to find Defendants' rationale pretextual.

### 3. Aiding and abetting

Under NJLAD, it is unlawful "for any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." N.J.S.A. § 10:5-12(e). To make a claim for aiding and abetting, "(1) the party

whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004). Courts consider five factors when deciding whether defendant knowingly and substantially assisted the employer's discrimination and/or retaliation against plaintiff: (1) the nature of the act encouraged; (2) the amount of assistance given by the defendant; (3) whether the defendant was present at the time of the asserted discrimination and/or retaliation; (4) the defendant's relationship to others involved in the discrimination and/or retaliation; and (5) the defendant's state of mind. *Id.* Defendants proffer no reasoning for why they are entitled to summary judgment on this claim other than their view that summary judgment is appropriate for the discriminatory and retaliation claims. Taking the facts in the light most favorable to Plaintiff, supervisors were aware of Plaintiff's discrimination complaints against Defendant Fuscellaro, and supervisors participated in Plaintiff's termination decision. There are material facts in dispute as to the rationale and decision-making process for Plaintiff's termination.

### C. Claims for overtime pay under the FLSA and NJWHL

The Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA") sets requirements for overtime pay. Section 7(a) of the FLSA requires employers to pay their employees 1.5 times the employees' standard hourly pay for hours worked over forty hours in a workweek. 29 U.S.C. § 207(a); *accord Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 242 (3d Cir. 2014). The New Jersey Wage and Hour Law, N.J. Stat. Ann. §§ 34:11-56a-34:11-56a38 ("NJWHL") mirrors the FLSA in that it requires time and a half pay for hours worked over forty hours in a workweek. *See Lin v. Fada Grp. Inc.*, Civil Action No. 20-5942, 2021 WL 423757, at

*3 (D.N.J. Feb. 4, 2021) (collecting cases).

Defendants seek summary judgment on these overtime claims, arguing that Plaintiff has not provided any evidence other than her own testimony that she worked over forty hours each week without pay. Def. Br. (Doc. No. 52-1 at 25). Defendants maintain that LCS does not permit working "off the clock," and that no supervisor told Plaintiff to work after clocking out. (*Id.* at 26.) Per Defendants' own assessment of the evidence, material facts are in dispute: Plaintiff testified that she was asked to work overtime and did so, whereas her employers testified otherwise.

Plaintiff has proffered sufficient evidence to survive Defendants' motion for summary judgment on the overtime claims. A plaintiff's sworn testimony in and of itself is evidence that she worked overtime and was not compensated. *See, e.g.*, *Chen v. Century Buffet & Rest.*, Civil Action No. 09-1687, 2012 WL 113539, at *6-7 (D.N.J. Jan. 12, 2012). To contradict Plaintiff's testimony regarding overtime, Defendants proffer their own deposition testimony. It is not our role to weigh the conflicting testimony; that is for the factfinder to determine at trial.

## IV.   CONCLUSION

Granting summary judgment for Defendants would require resolution of several disputed issues of material facts. This decision is inappropriate at the summary judgment stage. Defendants' motion for summary judgment (Doc. No. 52) is **GRANTED IN PART** only with respect to FMLA and disability discrimination claims and **DENIED IN PART** with respect to all other claims. An accompanying Order shall issue.

Dated: 8/30/2021

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge